IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| LAFITTE'S COVE AT PIRATES' BEACH NATURE SOCIETY, § § § Plaintiff, § § v. § § U.S. ARMY CORPS OF ENGINEERS, et al., § § § Defendants. § | § § § § CIVIL ACTION NO. G-04-185 § § § § § § |

## ORDER LIFTING INJUNCTION

This case arises out of the permit application process for a development on the west end of Galveston Island. Plaintiff Lafitte's Cove at Pirates' Beach Nature Society ("Plaintiff") brought suit against Defendants U.S. Army Corps of Engineers (the "Corps"), Colonel Leonard D. Waterworth ("Waterworth"), and various other Defendants (collectively "Defendants"), in May, 2004, alleging that the Corps failed to sufficiently analyze the cumulative impact of certain development projects on the west end of Galveston Island. Plaintiff and Defendants filed competing Motions for Summary Judgment. On December 14, 2004, this Court issued an Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment, which also enjoined Permit 22790 and all further work on the Harbor and Sanctuary development pending proper analysis of the permit application by the Corps. A Final Judgement was issued concurrently with the Order. On January 16, 2007, the Corps and Waterworth filed an Opposed Motion for Relief from Judgment, to which Plaintiff timely filed a Response. The Court denied Defendants' Motion for Relief from

1

Judgment on February 15, 2007, stating that "an improper ruling could potentially have devastating effects" and that, therefore, it would not lift the injunction until the Parties had an opportunity to present their opposing claims in a live hearing.[1]  Such a hearing was held on May 10, 2007.  For the reasons articulated below, the Court must **GRANT** Defendants' Motion to Lift the Injunction.[2]

**I. Background**

The full details of the background and procedural history of this case are contained in the Court's previous Orders.  Here, the Court will give only a brief synopsis of the facts.  Blackard Pirates Galveston Development ("Blackard") owns land in Galveston that it previously designated as a "permanent" spoil disposal area and future maintenance dredge location for Pirate's Cove Section 6 development, which is also known as Lafitte's Cove.  Blackard's predecessor applied to the Corps for a permit to build the Harbor and Sanctuary housing development (the "Harbor") on the alleged "permanent" future maintenance dredge location.  The Corps issued the permit, and Plaintiff brought suit against the Corps and other defendants alleging that the Corps had failed to conduct a proper cumulative impacts analysis regarding the environmental impact of building a housing development on the future maintenance dredge location.  The Court agreed with Plaintiff and issued an injunction that prohibited all further work on the Harbor pending a proper analysis of the permit by the Corps.  The Corps now claims that it has conducted such an analysis.

---

[1] The Court hereby incorporates its Order Denying Motion for Order to Show Cause in its entirety.

[2] The Court does not consider this Order worthy of publication.  Accordingly, it has not requested and does not authorize publication.

**II. Legal Standard**

Congress, in enacting the National Environmental Policy Act ("NEPA"), sought "to foster and promote the general welfare" by helping to "create and maintain conditions under which man and nature can exist in productive harmony." 42 U.S.C. § 4331. Its method of doing so involves a set of procedural rules that require agencies of the federal government to determine whether there are possible adverse environmental effects of any actions taken that significantly affect "the quality of the human environment." § 4332; *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350, 109 S. Ct. 1835, 1846, 104 L. Ed. 2d 351 (1989) ("[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process."). The agency contemplating such actions must "carefully consider . . . detailed information concerning significant environmental impacts," and the relevant information must be "made available to the larger audience" so that the public "may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson*, 490 U.S. at 349, 109 S. Ct. at 1845. Thus, the agency is required to develop "detailed impact statements," which give the public information about the proposed federal action and provide "a springboard for public comment." *Id.*

A detailed Environmental Impact Statement ("EIS") is only required if the federal action has a "significant" impact on the environment. *See* 42 U.S.C. § 4332. Agencies determine whether the potential impact is significant enough to require an EIS by preparing an Environmental Assessment ("EA"). *See Spiller v. White*, 352 F.3d 235, 237 (5th Cir. 2003) (citing *Sabine River Authority v. U.S. Dep't of Interior*, 951 F.2d 669, 677 (5th Cir. 1993)). "The EA is a 'concise' document that 'briefly' discusses the relevant issues and either reaches a conclusion that preparation of an EIS is necessary or concludes with a 'Finding of No Significant Impact.'" *Id.* If there is a Finding of No Significant

Impact, then the agency is not required to prepare an EIS.

If an agency's decision not to prepare an EIS is challenged, the court may review the administrative record to determine if the agency's Finding of No Significant Impact was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see Spiller*, 352 F.3d at 240. The reviewing court "has the 'least latitude in finding grounds for reversal' of an agency decision and 'may not substitute its judgment for that of the agency.'" *Spiller*, 352 F.3d at 240 (quoting *Sabine River*, 951 F.2d at 678).

## III. Analysis

It is encouraging that society, in general, is becoming more aware of the detrimental impact man's excesses are having on our planet. At the same time, it is distressing that certain segments of society prefer to ignore the overwhelming evidence before them of the adverse effects their choices have upon the environment. Even more disturbing is that the needs of those who are concerned with the macrocosm are unsatisfied because the rights of those whose vision is confined to the microcosm have precedence.

The Court has been presented with valid scientific evidence that development of Galveston Island involving dredged channels and altered uplands "increases the likelihood that even a moderate hurricane will sever the island." Pl.'s Ex. 12 (report of Dr. H.C. Clark, a geophysicist at Rice University). However, the evidence only speaks of probabilities. Defendants' evidence indicates that the development contemplated at the Harbor is minor in comparison with the vast amount of cut and fill development already completed on the Island. Nobody can predict the exact impact this single additional development will have on the overall probability that a hurricane will sever the Island.

As discussed above, the legal standard requires the Corps to develop an EIS only if it

determines that the action in question will have a significant environmental impact. Previously, the Court was concerned that the Corps' EA, in which it concluded that the Harbor development had no significant environmental impact, did not include a sufficient cumulative impact assessment and did not sufficiently consider the loss of the spoil disposal area and future maintenance dredge location. The Corp claims that both of the Court's prior concerns have been rectified. It asserts that it thoroughly reviewed the evidence Plaintiffs presented regarding the cumulative impact of the cut and fill development on the Island, and that it determined that the impact of this one development is inconsequential. Additionally, according to the Corps, the loss of the spoil disposal area did not significantly impact its decision not to prepare an EIS at this juncture because the original permit designating the spoil disposal area and future maintenance dredge location has been amended, and another area has been designated. The Court is not only unable to second-guess the Corps on these issues because it is impossible to predict the exact impact of the development, it is legally unable to do so. The Corps undoubtedly took a "hard look" at the possible consequences of the development when it considered Plaintiff's evidence, and it decided to grant or amend the permits in question. *See Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21, 96 S. Ct. 2718, 2730 n.21, (1976) ("The only role for a court is to insure that the agency has taken a 'hard look' at environmental consequences."); *see also Robertson*, 490 U.S. at 333, 109 S. Ct. at 1837 (citing *Kleppe* for this proposition). Unless the Corps' actions were arbitrary and capricious, the Court's hands are tied. *See Spiller*, 352 F.3d at 240. Thus, though the Court is sympathetic to Plaintiff's environmental concerns,[3] it must, under the law as it

---

[3]The Court's reasoning is further developed in the Record and bears no repetition here.

stands, dissolve the injunction and allow the Harbor development to proceed.[4]

## IV. Conclusions

For the reasons stated above, Defendants' Motion to Lift the Injunction is **GRANTED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 11th day of May, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

---

[4]The Constitution vests power to provide for the nation's general welfare in the Legislative Branch; thus, Plaintiff's environmental concerns could be more aptly address by the legislature. *See* U.S. Const. art. I, § 8.